**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert Herbert KRAMER, Defendant.**

**No. IP 98–140 CR B/F.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 10, 1999.

Timothy M Morrison, Assistant U.S. Attorney, Indianapolis, IN, for plaintiff.

William E Marsh, Indiana Federal Community Defenders, Indianapolis, IN, for defendant.

***ENTRY***

BARKER, Chief Judge.

The prosecution, United States of America (the "government"), seeks a criminal conviction of defendant, Robert H. Kramer ("Kramer"), for willfully failing to pay a past due child support obligation, in violation of 18 U.S.C. § 228, known as the "Child Support Recovery Act" ("CSRA"). For the reasons discussed, we find the defendant *GUILTY* as charged in the grand jury's one count indictment.

*Factual Summary*

On March 10, 1999, a bench trial was conducted at which only two witnesses testified, one for the government and one for the defendant: Janice Jacobs (formerly Janice Hughes), the mother of the child for whom support is sought, and the defendant

Kramer. Our factual recitation derives from the testimony of these two individuals and the exhibits introduced into evidence.

On November 25, 1980, Jacobs, a resident of Indianapolis, gave birth to a son, Beecher Ray Hughes ("Beecher"). Approximately ten months earlier in January 1980, Kramer and Jacobs had met in Indianapolis and had a brief sexual relationship that ended no later than January 30, 1980. Kramer's permanent residence was in Minnesota; he has never resided in Indiana, but his job brought him to Indianapolis for three weeks in January 1980, while he trained to become a truck driver for Mayflower. Jacobs maintains that Kramer was her son's father. Kramer testified that he received a call via his dispatcher when Beecher was born informing him that he was the father of a baby boy (Jacobs' brother apparently called Mayflower and asked that the newborn's weight and length be conveyed to Kramer).

Sometime in late 1982, Jacobs and Kramer had a conversation when Jacobs informed Kramer that she intended to file a paternity action against him in Indiana. The parties dispute whether Kramer ever denied being Beecher's father, but they agree that Jacobs filed the paternity action in 1982 in the Marion County Circuit Court, Marion County, Indiana, under cause number CPT82–5637. It is also undisputed that Kramer never appeared at this or any subsequent paternity-related proceedings and that the Indiana court established Kramer's paternity by default judgment. In December 1992, the Marion County Circuit Court directed Kramer to pay child support for Beecher to the Marion County Clerk at the rate of $25 per week. Kramer also testified that sometime in 1991, he had a conversation with an Indiana social services agent regarding paternity, when he informed the agent that he did not wish to discuss the situation further unless his paternity was first established by some means such as a blood test.

Kramer testified both that he possessed no knowledge (in 1982) that a paternity action had been filed against him and that he never received either formal service of process or any informal notification of the paternity proceedings. Neither party asserts (nor does the state court file reveal) that service of process was in fact obtained on Kramer. Kramer testified that he first learned of the paternity action in the fall of 1990 when his employer, Mayflower, informed him that an Indiana court had ordered it to take $50.00 from each two-week pay-check for outstanding child support. Kramer testified that Mayflower informed him that it would comply with the court order and that if he disagreed with the order it was up to him "to do something about it." Kramer testified that this attachment of wages prompted him to retain Indianapolis attorney Timothy L. Bookwalter and to challenge the 1982 default judgment establishing his paternity. Kramer succeeded in retaining Bookwalter, an attorney licensed and practicing in Indiana, even though he maintained a residence in Minnesota. In a sworn statement in that pleading (Def.'s Ex. A), Kramer denied that he is the father of Beecher and stated that he had possessed no knowledge of the paternity proceeding until Mayflower informed him in 1990 that a wage withholding order was in place. He denied ever residing in Indiana, noting that he had been employed as an over-the-road truck driver for the past eleven years.

The Marion County Circuit Court set a hearing on Kramer's petition to set aside the default judgment for September 24, 1991. Kramer failed to appear at the hearing despite learning from Bookwalter that a hearing had been scheduled for that date. Kramer testified that he contacted Bookwalter by telephone and informed him that he would be unable to attend the hearing. He testified that he repeated his telephone calls notifying his counsel of his unavailability for other court settings a "couple of times." Def.'s Ex. A. In December 1991, Bookwalter filed a motion to withdraw as Kramer's counsel, stating that

Kramer "has failed and refused to cooperate with counsel by not appearing for court dates." Kramer received Bookwalter's notice of his withdrawal as counsel, but he failed to retain another attorney to challenge the default judgment establishing his paternity. Kramer worked at Mayflower until January 1992, when he quit because he failed to renew his trucker's license and because he was suffering from "asthma" and self-diagnosed "depression" caused in part by worries regarding the Indiana child support order.

In June 1993 through February 1994, Kramer obtained a job at Lenneman Transport, where he apparently managed to work despite his asthma and depression. He earned approximately $1,600.00 a month. In December 1993, he injured his back and eventually received workers compensation benefits in the amounts of $8,200 in November 1994 and $20,000 in February 1996. Lenneman never attached any of Kramer's wages to pay child support obligations. In 1995, Kramer also received $5,100 from the estate of his deceased mother. Kramer has not worked since February 1994 because he does not believe that he could pass a physical, due to his bad back, asthma and depression. He currently resides in the state of Washington with his brother. In 1996, when an FBI Special Agent visited Kramer in Washington, Kramer testified that he informed that agent that he did not see any reason to attempt to work while this paternity action

remained unresolved. Kramer further testified that after Bookwalter withdrew as his attorney and Kramer left Mayflower, he saw no reason to do anything since he did not know that he owed child support.

On October 15, 1998, a federal Grand Jury returned the following indictment:

The Grand Jury charges that:

Between October 1993, and December, 1995, ROBERT HERBERT KRAMER, defendant herein, and a resident of Minnesota, did willfully fail to pay a past due support obligation with respect to a child who resides in Indiana, all in violation of Title 18, United States Code, Section 228.

### Legal Background

■ The Child Support Recovery Act makes it a crime for one to willfully fail to pay a past due child support obligation with respect to a child who resides in another State. The CSRA defines a "past due child support obligation" as any amount "determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child...."[1]

Therefore, in order for the government to obtain a conviction pursuant to the CSRA, it must prove the above elements beyond a reasonable doubt, including: (1) that defendant Kramer acted willfully, (2) that he failed to pay, (3) a past due sup-

---

1. The version of the Child Support Recovery Act in effect during the period described in the indictment provides, in relevant part:

(a) *Offense.*—Whoever willfully fails to pay a past due support obligation with respect to a child who resides in another State shall be punished as provided in subsection (b).
(b) Punishment.—The punishment for an offense under this section is—
(1) in the case of a first offense under this section, a fine under this title, imprisonment for not more than 6 months, or both; and
(2) in any other case, a fine under this title, imprisonment for not more than 2 years, or both.
....
(d) Definitions.—As used in this section—

(1) the term "past due support obligation" means any amount—
(A) determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living; and
(B) that has remained unpaid for a period longer than one year, or is greater than $5,000....
18 U.S.C. § 228 (emphasis added).
In 1998, Congress amended the CSRA, adding a provision on venue and rewriting the "Offense" section, although the substance remains unchanged in respect to the case before us. *See* 18 U.S.C. § 228.

port obligation, (4) with respect to a child who resided in another State. "Congress has expressly recognized that collecting past due child support obligations from out-of-state deadbeat parents has outgrown state enforcement mechanisms." *United States v. Black,* 125 .F.3d 454, 458 (7th Cir.1997).

### Decision

The evidence adduced at trial establishes that the following facts are undisputed. An Indiana state court entered a child support order against Kramer in 1982, in an amount of $25 per week, and established his paternity by default judgment. While Kramer may not have learned of the lawsuit or the entry of default judgment in 1982, it is clear that he understood by at least 1990 that such an order had been entered against him. In fact, when his wages were attached by Mayflower in late 1990, Kramer retained an attorney to challenge the state court judgment. However, as we have previously noted, Kramer chose not to appear at his scheduled hearing(s) or to further pursue his challenge to that judgment after his attorney withdrew from the case in late 1991.

It is also undisputed that Kramer failed to pay the $25 per week during the period set forth in the indictment (October 1993 – December 1995), and that delinquent support due is both greater than $5,000 and has been past due for over one year. The evidence also conclusively establishes that the child for whom support is sought (Beecher) has resided in Indiana during all relevant periods, while Kramer has resided in another State (Minnesota). Therefore, the evidence establishes beyond a reasonable doubt that Kramer knew prior to October 1993 that an Indiana state court had ordered him to pay child support for a child that resided in a different state than him and that he failed to do so.

We harbor no hesitancy in concluding that Kramer acted willfully in not paying the support amount due. Indeed, Kramer promptly challenged the state child support order when it served his interest to do so—when Mayflower's attachment of his wages affected his pocket-book. Kramer's suggestion that he no longer believed he owed child support after leaving Mayflower, co-incidentally when he no longer felt the pinch of attachment, is belied by his own June 19, 1991 affidavit in support of his petition to set aside the default judgment, in which he affirmed under the penalty of perjury that: "On December 6, 1982, a Default Judgment was entered against a Robert E. Kramer, finding [him] to be the father of a minor child, BEECHER RAY HUGHES ... and ordering [him] to pay Twenty-five dollars ($25.00) per week and for the support [for] the minor child beginning December 17, 1982." Def.'s Ex. A (state court-file). His affidavit further confirmed that he understood that an income withholding order was filed ordering Mayflower to begin withholding $25.00 per week from his wages to pay for "current child support and arrearage." *Id.*[2] Kramer's testimony at trial that he no longer understood that a state court order required him to pay child support after he left Mayflower fails to provide an escape hatch from the willfulness element of the charge against him. Indeed, we do not credit Kramer's assertion that he simply forgot that an outstanding support order existed, as other testimony he provided revealed that the outstanding matter caused him such discomfort as to contribute to his ongoing "depression."

█ Kramer's defense essentially distills into a collateral attack of the state court default judgment. Kramer contends that since he never received service of process for the 1982 proceeding, the state court's support order cannot be considered a valid "support obligation" within the meaning of the CSRA. He reasons that the support order against Kramer is not enforceable under Indiana law because no summons was ever issued to Kramer, and that we therefore cannot convict Kramer pursuant to the CSRA. We disagree.

2. The amount in arrearage, as of November 25, 1998, is $19,750.

If we were to accept Kramer's position at face value, federal district courts applying the CSRA would find themselves with the insuperable task of looking behind and perhaps second-guessing state court judgments every time a defendant asserts that state law fails to support the prior state decision. The government correctly notes that several circuits have rejected this position decisively. Hence, in *United States v. Bailey*, 115 F.3d 1222, 1232 (5th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 866, 139 L.Ed.2d 764 (1998), the court reasoned:

> A CSRA prosecution turns only on the defendant's violation of a state court order. It does not turn on the fairness of the order, the reasons underlying the state court's issuance of the order, the defendant's relationship with his children or former spouse, or any other matter involving relitigation of a family law issue. Moreover, there is no language in the CSRA allowing the federal court to look beyond the four corners of the state child support order or permitting the defendant to collaterally attack the state court order in federal court.

*See also United States v. Brand*, 163 F.3d 1268, 1276 (11th Cir.1998); *United States v. Sage*, 92 F.3d 101 (2d Cir.1996); *United States v. Johnson*, 114 F.3d 476 (4th cir. 1997); *but see United States v. Lewis*, 936 F.Supp. 1093, 1101–03 (D.R.I.1996).

While not as direct, our circuit has echoed the same sentiments, noting its reluctance to allow collateral attacks to a state court's child support order in the context of CSRA prosecutions. In discussing whether a state court must issue an order establishing the amount of delinquent child support as a prerequisite to the exercise of federal jurisdiction, in *United States v. Black*, 125 F.3d 454, 458 (7th Cir.1997), the court held that as long as a prior state court order creates an obligation to pay child support, a parent's willful violation of that order triggers the CSRA. In dicta, the court explained that the district court below properly analyzed the case before it:

> The CSRA does not envision a formal state order or agency ruling of arrearage as a prerequisite to the exercise of federal jurisdiction.

We are also persuaded by the district court's take on Black's argument:

> For every order, the possibility exists that a court may later alter or vacate it, whether because of changed circumstances, **or even because the order was wrong when it issued.** As a basic principle, however, **this possibility of later change does not relieve the person subject to the order from the responsibility of following it until a court actually does change it.** This principle supports the conclusion that if an Indiana court ordered Black to pay child support and he willfully failed to do so for the time or in the amount specified in the Act, he violated the Act regardless of whether he might have been able to get the support order changed. No second order should be required to somehow shore up the first.

*Black*, 125 F.3d at 464 (emphasis added).

Likewise, Kramer should have challenged the state court default judgment through state channels, a fact he readily comprehended when hiring an attorney to do just that, if he believed it to have been improperly entered. The fact that he chose to allow his state challenge to fall by the way-side does not allow him to renew his objection to the state default judgment at this belated juncture in federal court. Therefore, we find that the 1982 default order and award of child support constitutes a valid "support obligation" within the meaning of the CSRA.

Finally, Kramer contends that the due process clause of the Fifth Amendment precludes his conviction under the CSRA. He asserts that since he failed to receive actual or constructive knowledge of the 1982 paternity and support award proceeding, he was denied due process in that proceeding by not having notice and an opportunity to be heard. He further contends that he would be denied due process in this federal prosecution if convicted for

violating. a court order when he was not afforded notice or an opportunity to be heard when that prior court order was issued. Again, we disagree.

Quite apart from our recognition above that we, as a federal court, may not look beyond the four corners of the predicate state court child support order, we find that the evidence in this case demonstrates that Kramer has been afforded sufficient due process. Kramer suggests that the holding of *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), provides support for his position. However, in *Mendoza–Lopez*, the Supreme Court merely recognized that where a determination made in an administrative proceeding plays a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of that administrative proceeding. *Id.* at 2155. Here, unlike in *Mendoza–Lopez*, Kramer effectively possessed the opportunity to seek a review of the prior state court judgment—by pursuing redress in the Indiana courts. Most notably, Kramer had more than ample opportunity to challenge the state court judgment prior to October 1993, the onset of the period for which he is charged in the indictment with willfully failing to pay child support. Any putative due process violation occurring in 1982 was cured by the Indiana state court's granting Kramer a hearing to challenge that default judgment in late 1991. Kramer admits that he had notice of this hearing and an opportunity to be heard, yet he chose not to appear or to pursue that dispute at a later date. Given the evidence before us, we find no injustice for Kramer based on any compromising of his due process rights by Indiana courts. Therefore, Kramer's alleged due process violation does not foreclose a CSRA conviction. Accordingly, we find that the evidence establishes his guilt beyond a reasonable doubt, as charged in the indictment.

### Conclusion

For the reasons discussed, we find that the evidence adduced at trial demonstrates that defendant Kramer is guilty beyond a reasonable doubt of willfully failing to pay a past due child support obligation with respect to a child who resides in another State, in violation of 18 U.S.C. § 228 and as charged in indictment.